UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   Criminal Case No. 24-20174
                                                    Honorable Linda V. Parker

LEROY BENJAMIN YOUNG,

    Defendant.

_____/

# OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF THE DETENTION ORDER (ECF NO. 13)

Defendant Leroy Benjamin Young ("Defendant") is charged in a two-count indictment with: (I) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (II) felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 14.)  On March 22, 2024, Magistrate Judge Kimberly G. Altman ordered Defendant detained pending trial after finding, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  (ECF No. 9.)

In addition to the findings made on the record, Judge Altman also considered that: (1) the weight of the evidence against Defendant was strong; (2) Defendant is subject to a lengthy period of incarceration if convicted; (3) Defendant has a prior

criminal history; (4) Defendant has a history of violence or use of weapons; and (5) Defendant has a history of alcohol or substance abuse. (*Id.*) The matter is presently before this Court on Defendant's motion for revocation of the detention order. (ECF No. 13).

## I.  Background

Defendant was arrested on March 20, 2024, at his duplex home in Detroit, Michigan. (ECF No. 1 at PageID. 3.) The affidavit in support of the criminal complaint alleges that a Davis Industries Model D 32 (.32 Auto) handgun, bearing serial number 87613, was found during a search of Defendant's living quarters of the duplex-residence. (*Id.* at PageID. 4.) It further alleges that several boxes of ammunition were found in his living quarters of the residence. (*Id.* at PageID. 4-5.)

On March 21, 2024, Defendant made his initial appearance before Judge Altman. (ECF No. 3.) A Pretrial Services Report ("Report") recommended Defendant be released with conditions, on an unsecured bond. (ECF No. 13-4.) On March 22, 2024, Judge Altman held a detention hearing, where she disagreed with the recommendation of Pretrial Services and denied Defendant's request to be released pending trial. (ECF No. 9.) In doing so, Judge Altman considered additional facts and circumstances not contained in the affidavit in support of the complaint. Namely, by way of proffer from the Government, Judge Altman

considered the information included in the affidavit in support of the search warrant and information regarding what was recovered during the search of Defendant's residence, in addition to the firearm and ammunition.

On April 1, 2024, Defendant filed the instant motion to revoke Judge Altman's detention order. (ECF No. 13.) This Court held a hearing on Defendant's motion on May 2, 2024. Much of the Government's proffer was repeated in their opposition to Defendant's motion to revoke the detention order. (ECF No. 19.) Moreover, at the motion hearing, the Government provided the affidavit in support of the search warrant for *in camera* review.[1] The Government alleges that Defendant is engaged in drug and sex trafficking. Specifically, the Government alleges that between July 2022 and February 2024, three victims have reported that Defendant forced them to engage in commercial sex at his duplex home and at hotels. (*Id.* at PageID 66.) The Government claims that one victim described Defendant as a "ruthless pimp." (*Id.* at PageID. 67.)

The Government alleges that the victims reported that Defendant used a website known as "Megapersonals," to advertise them for commercial sex

---

[1] The affidavit in support of the search warrant did not contain statements from the alleged victims of sex trafficking but contained summaries of reports from the alleged victims. While not required under the Jencks Act, 18 U.S.C. § 3500, as there was no examination of witnesses at the hearing, the Government provided a copy of the affidavit to Defendant and his counsel. *See United States v. Minksy*, 963 F.2d 870, 875 (6th Cir. 1992) ("The Jencks Act requires the production of any statements by a witness who testified on direct examination for the prosecution.").

3

purposes.  (*Id.* at PageID. 69.)  More than 300 ads for commercial sex with one of the victims were posted, with some ads being posted as recently as February 2024.  (*Id.* at PageID. 68.)  The Government also alleges that victims reported that Defendant exploited their drug addiction and paid them in drugs. (*Id.* at PageID. 66.)  The Government alleges that these victims reported that Defendant expected them to make $1,000 per day.  (*Id.*)  It further alleges that if the victims did not make $1,000 per day, Defendant would withhold drugs from them, and if they made less than $800 per day, Defendant would beat them.  (*Id.*)

The Government also alleges that two victims reported that Defendant sexually assaulted them and allowed one of his associates to sexually assault them. (*Id.* at PageID. 66.)  It further alleges one victim reported that when she tried to escape Defendant's residence, he physically assaulted her and forced her back to the residence.  (*Id.* at PageID. 66-67.)  It also alleges that the victims reported that Defendant would make the women wear dog collars and force them to walk like a dog.  (*Id.* at PageID. 67.)

Lastly, the Government alleges that the victims reported that Defendant stored large quantities of drugs at his home, used large dogs to protect these drugs and routinely "cooked crack" inside of the home.  (*Id.* at PageID. 68.)

According to the Government, during the execution of the search warrant on Defendant's residence, Defendant refused to comply with officers' instructions to

exit the premises. (*Id.* at PageID. 70.) After ten minutes of refusing to comply, a K-9 entered Defendant's residence and alerted officers to Defendant's bathroom, which, according to the Government, suggests that Defendant was trying to dispose of drugs by flushing them down the toilet. (*Id.*) Officers also found other evidence of alleged drug trafficking, such as syringes, glass pipes, digital scales, Narcan, and large amounts of marijuana. (*Id.* at PageID. 70-71.)

The search also recovered, what the Government proffers as, evidence of sex trafficking. (*Id.* at PageID. 71.) This alleged evidence includes a handwritten ledger with dates, locations, and prices for commercial sex, including client information and preferences, condoms, and lubricant oils. (*Id.*)

Further evidence of alleged sex trafficking was recovered on Defendant's cellular phone. This includes login information to the "Megapersonals" website, which showed a login as recently as March 19, 2024, a day before Defendant's arrest, as well as text conversations about sex dates. (*Id.* at PageID. 69.) Photos were also recovered in the cellular phone which included: (1) the driver's license of the alleged victims; (2) the alleged victims engaged in sexual acts; (3) one of the alleged victims engaging in a sexual act with Defendant; and (4) images of one alleged victim in a spiked dog collar. (*Id.*) Moreover, approximately fifteen minutes after his arrest, Defendant's residence was the target of a shooting. (*Id.* at PageID. 71.)

Parties' Arguments

Defendant now moves to revoke Judge Altman's March 22, 2024, detention order. Defendant argues that: (1) he has not been charged with anything except being a felon in possession; and (2) there is nothing that suggests that conditions could not be set to ensure his appearance in court or protect the safety of the community. (ECF No. 13 at PageID. 27.)

The Government argues that, based on the outlined conduct, Defendant: (1) is a danger to the community; (2) his house is a hub for criminal activity; and (3) there are no conditions that will assure the community's safety if he is released. (ECF No. 19 at PageID. 63-64.)

## II.   Legal Standard

The review of detention orders is governed by the Bail Reform Act, which provides in relevant part: "If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court reviews the appeal of a detention order *de novo*. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); *see also United States v. Koubriti*, No. 01-cr-80778, 2001 WL

1525270, at *5 (E.D. Mich. Oct. 16, 2001) ("District courts within the Sixth Circuit appear to adhere to a requirement of *de novo* review.").

The Bail Reform Act lists four factors courts must consider when deciding release decisions. 18 U.S.C. § 3142(g). First is "the nature and circumstances of the offense charged." *Id.* § 3142(g)(1). The second and third are "the weight of the evidence against the person" and the individual's "history and characteristics." *Id.* § 3142(g)(2)-(3). The latter includes:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

*Id.* § 3142(g)(3). The final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4).

"The default position of the law [] is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Nevertheless, under the Bail Reform Act, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions

7

will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id*. (quoting 18 U.S.C. § 3142(e)).

Moreover, a judge's finding of dangerousness must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) ("The government must prove . . . dangerousness to any other person or the community by clear and convincing evidence.").

When considering the danger a defendant will pose to the community if released, numerous district courts have held that the Court may consider uncharged conduct. *See United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) (alterations added) ("[T]he Court also considers . . . conduct [that] did not result in criminal charges."); *United States v. Brown*, No. 22-383, 2022 WL 10080824, at *3 (N.D. Ill. Oct. 17, 2022) (alteration added) (citation omitted) ("[E]vidence of uncharged conduct may be considered at a detention hearing, as long as it is properly evaluated and weighed."); *United States v. Tolbert*, No. 3:09-CR-56-TAV-HBG, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (alteration added) ("[T]he court may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution. This is because the § 3142(g) analysis is concerned with a practical assessment of the defendant's

8

dangerousness, rather than an adjudication of guilt for a particular offense."); *United States v. Choudhry*, 941 F. Supp. 2d 347, 350 (E.D.N.Y. 2013) (alteration added) (citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."); *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015) (alteration added) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."); *United States v. Gatson*, NO.: 2:21-CR-36-JD-JPK, 2021 WL 1170201, at *5 (N.D. Ind. Mar. 26, 2021) (citing *Sanders*, 466 F. Supp. 3d at 786) (alteration added) ("[M]ultiple district courts in several jurisdictions have noted that uncharged conduct may be considered during a detention hearing.").

### III.    Legal Analysis

1. <u>Nature and Circumstances of the Offense Charged</u>

Defendant is charged with being a felon in possession of a firearm and ammunition. (ECF No. 14.) The nature and circumstances surrounding Defendant's possessory offenses are deeply concerning given his association with illegal drugs and alleged sex trafficking. The presence of a firearm and ammunition, in connection with drug and sex trafficking, elevates the level of danger associated with that conduct, even if that conduct is uncharged. Moreover,

during Defendant's arrest, it is alleged that he attempted to dispose of drugs by flushing them down the toilet.

Looking at the totality of circumstances, considering the evidence of drug trafficking present, Defendant's alleged willingness to protect those drugs by disposing of them through the toilet, and the reports against him of physical and sexual violence by alleged victims of sex trafficking, the nature and circumstances surrounding the weapon and ammunition possession offenses weigh in favor of detention.

2. Weight of the Evidence

The "weight of the evidence" referenced in § 3142(g)(2) goes to the weight of the evidence of dangerousness and flight, not the evidence of the underlying offense. *United States v. Sykes*, 453 F. Supp. 3d 1011, 1016 (E.D. Mich. 2020) (citing *Stone*, 608 F.3d at 948). The evidence against the Defendant weighs strongly against his release. While there appears to be no evidence of flight, the weight of the evidence, as it relates to dangerousness, is strong.

As alleged by the Government, evidence shows that Defendant has a history of violence against women, with an alleged history of both physical and sexual assault against victims who have reported that he forced them to engage in commercial sex. While this is uncharged conduct, as previously mentioned, the Court is permitted to consider this evidence when assessing Defendant's

dangerousness. The evidence also shows that Defendant is engaged in the distribution of illegal narcotics, having distribution-level amounts of marijuana, scales, and other drug paraphernalia. This evidence, combined with the evidence of a firearm and ammunition, speaks to Defendant's dangerousness as, if released, Defendant could continue to engage in drug distribution, commercialized sex, and weapons possession. Therefore, this evidence weighs strongly against release.

   3. History and Characteristics

Looking at the history and characteristics of Defendant, according to the Pretrial Services Report, he is single, fifty-nine years of age, father of four, and is self-employed. (ECF No. 13-4 at PageID. 42.) Defendant owns a landscaping business and trains dogs. (*Id.* at PageID. 43.) Defendant has family ties in the district, including ten siblings, with whom he has daily contact. (*Id.*)

The Report also states that Defendant uses marijuana daily and has not used crack-cocaine since 1996, however, the preliminary results of a pre-bail urinalysis tested positive for both marijuana and cocaine. (*Id.* at PageID. 44.) Defendant has no reported mental health conditions. (*Id.*) The Report states that he is in excellent physical health, only noting that he sustained a gunshot wound in his stomach in 1994. (*Id.*) There is no indication that Defendant was on probation or parole at the time of his arrest.

Under the Bail Reform Act, the Court is required to consider Defendant's criminal history.  According to the Report, Defendant has the following five convictions: Felony Armed Robbery in 1982 (*see* ECF No. 13-4 at PageID. 44); Felony Controlled Substance – Possess (Cocaine, Heroin, or Another Narcotic) Less than 25 Grams in 1992 (*see id.* at PageID. 45); Felony Controlled Substance – Delivery/Manufacture (Schedule 4) in 1996 (*see id.*); Felony Controlled Substance – Del/MFG (Cocaine, Heroin, or Another Narcotic) 450-999 Grams in 1998 (*see id.*); and Controlled Substance – Maintaining a Drug House in 2002 (*see id.* at PageID. 46.)  Despite this troubling history, the Court declines to give these convictions much weight given their age, the most recent being from over twenty years ago in 2002.

Defendant has strong family ties to the community, no reported mental health issues, and no record giving concern about his appearance in Court when required.  While Defendant has a criminal history of dangerous conduct related to armed robbery and narcotics, as noted, these convictions occurred several years ago.  Defendant also reported a history of substance abuse, having tested presumptively positive for cocaine and marijuana.  This factor, therefore, remains neutral and does not weigh in favor of either release or detention.

4. <u>Nature and Seriousness of the Danger Posed by Release</u>

The nature and seriousness of the danger posed by Defendant's release is significant. Evidence of drug trafficking combined with allegations of sex trafficking in light of Defendant's current charges of weapon and ammunition possession, pose a substantial risk to the alleged victims and the greater community as a whole. "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947, n.6 (alteration added). Defendant's conduct poses a considerable danger to the community for which pretrial detention is warranted.

## IV. Conclusion

All of the factors either weigh in favor of detention or remain neutral at this time. For the reasons set forth above, the Court holds that the order detaining Defendant prior to trial shall not be revoked as no condition or combination of conditions can reasonably assure the safety of any other person or the community. *See United States v. Smallwood*, No. 09–5566, 2022 WL 9119876, at *2 (6th Cir. Aug. 17, 2009) (alterations added) ("[Defendant]'s favorable history and characteristics cannot overcome the sheer weight of the . . . evidence against [him] and the seriousness of the danger to others posed by [his] release.").

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Revocation of the Detention Order (ECF No. 13) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 3, 2024