UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 24-cr-20174
        Honorable Linda V. Parker

LEROY BENJAMIN YOUNG,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 24) AND DENYING DEFENDANT'S RENEWED MOTION FOR BOND REVIEW (ECF No. 33)**

Defendant Leroy Benjamin Young ("Defendant") is charged in a two-count indictment with: (I) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (II) felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 14)  This matter is before the Court on Defendant's Motion to Dismiss Indictment and Renewed Motion for Bond Review. (ECF Nos. 24, 33) For the reasons described below, the court **DENIES** both motions.

I.      **SECOND AMENDMENT FRAMEWORK**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a

two-step framework for analyzing whether an individual's Second Amendment rights were violated and held that the regulation of those rights must be consistent with the "Nation's historical tradition of firearm regulations." 597 U.S. at 17.

To assess the constitutionality of a firearms regulation under the new framework in *Bruen*, the Court must follow a two-step approach. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Second, when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

### *Bruen* Analysis of § 922(g)(1)

The Court of Appeals recently clarified the impact of *Bruen* on Sixth Circuit precedent concerning the constitutionality of § 922(g)(1) in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). The *Williams* court began its *Bruen* analysis by thoroughly reviewing the plain text of the Second Amendment. *Williams,* 113 F.4th at 648-650.

The court rejected the argument that usage of terms such as "law-abiding" and "responsible" in *Bruen* and earlier Supreme Court case law justify barring felons from exercising their Second Amendment rights. *Id.* at 645–647. Instead, the court pointed to *Heller*'s direct assertion that the right to bear arms "belongs to

all Americans" and not an "unspecified subset." *Id.* at 646 (citing *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). Ultimately, it found that the Second Amendment presumptively protects a felon's right to possess a firearm and thus, passed to the second step of the *Bruen* analysis. *Id.* at 649.

The court then conducted an extensive historical analysis, as required by *Bruen*, and reached the conclusion that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Williams*, 113 F.4th at 657. The Sixth Circuit found that in light of the nation's history and tradition, "most applications of § 922(g)(1) are constitutional" and the statute is constitutional on its face and "as applied to dangerous people." *Williams*, 113 F.4th at 646. However, the court left open the possibility of an as-applied challenge should a defendant prove he is not dangerous and "and thus falls outside of § 922(g)(1)'s constitutionally permissible scope[.]" *Id.* It is the role of the district court to make this dangerousness determination.

### *Williams* Framework

The *Williams* court then provided three categories under which to view a defendant's past conduct to guide the dangerousness analysis. In the first category are crimes against the person, such as "murder, rape, assault, and robbery." *Id.* at 658. The court noted that a history of violent crimes like these are "strong evidence that an individual is dangerous." *Id.* In the second category are crimes

that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as drug trafficking and burglary. *Id.* at 659. The court also implied that a prior conviction for felon in possession of a firearm falls into this second category. *Id.* at 662. The court stated that convictions for these crimes will often "put someone's safety at risk, and thus, justify a finding of danger." *Id*. at 659. The court emphasized that a person who falls into the first two categories will have a very difficult time showing he or she is not dangerous. *Id.*

In the final category are "crimes that cause no physical harm to another person or the community," such as mail fraud and making false statements. *Id.* The court stated that these cases are a "more difficult category," but that district courts will likely "have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying the § 922(g)(1) charge. *Id.* Courts may also consider any evidence of past convictions in the record, as well as other judicially noticeable information, when assessing a defendant's dangerousness. *Id.* at 660. However, the question of what information

is relevant to determine dangerousness and the weight to give such evidence was intentionally left open by *Williams*.[1]

Nevertheless, the Sixth Circuit compared the assessment to dangerousness determinations made under 18 U.S.C. §§ 3142 and 3553. *Id.* at 657. The dangerousness determination must be "fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 661. The defendant bears the "extremely heavy" burden of showing that he is not dangerous. *Id.* at 658, 662.

Since *Williams*, when determining dangerousness, the Sixth Circuit has considered both the conduct which led to the defendant's § 922(g)(1) charge and whether the defendant was on supervised release when he or she accumulated the charge. *See United States v. Vaughn*, No. 23-5790, 2024 WL 4615853 (6th Cir. Oct. 30, 2024) (concluding that "[t]he fact that Vaughn's § 922(g)(1) conviction resulted from an incident where he shot at an individual certainly would lend to a showing of his dangerousness"); *see also United States v. Goins*, 118 F.4th 794 (6th Cir. 2024) (finding disarming individuals on parole, probation, or supervised release to be consistent with the nation's history and tradition).

## II. MOTION TO DISMISS ANALYSIS

---

[1] *Williams*, 113 F.4th at 657–658 n.12 ("We recognize that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness. In *Rahimi*, for example, a state court had issued the defendant a civil restraining order. 144 S. Ct. at 1895. However, we leave the question of what information is relevant for another day.").

To the extent Defendant is raising a factual challenge to § 922, that challenge is foreclosed. *See Williams*, 113 F.4th at 646. As the Defendant has not raised an as applied challenge, the Court does not reach the issue and the motion is **DENIED**.

However, the Court notes that according to the pretrial services report, Defendant has an extensive criminal history which includes the following convictions: (1) 1982 – felony armed robbery; (2) 1992 – felony possession of a controlled substance (Cocaine, Heroin, or Another Narcotic); (3) 1996 – felony delivery/manufacture of a controlled substance (Schedule 4); (4) 1998 – felony delivery/manufacture of a controlled substance (Cocaine, Heroin, or Another Narcotic); and (5) 2002 – maintaining a drug house. (ECF No. 13.) At the very least, the convictions involving narcotics and armed robbery likely fall under either category one or two of the *Williams* framework as crimes which pose a danger to others. Consequently, the Defendant will have a difficult time showing he is not dangerous in an as applied challenge.

### III. MOTION FOR BOND REVIEW

Defendant has also raised a renewed motion for bond review. (ECF No. 33) The grounds for the motion are: (1) the fact this case is eight months old; (2) the government has yet to file a superseding indictment charging allegations of sex trafficking; (3) the existence of a third-party custodian; and (4) Defendant's family

and business obligations.  (*Id.*)  The government filed a response.  (ECF No. 35)  Essentially, Defendant's argument is that the Court should ignore uncharged conduct in performing the dangerousness analysis.

On March 22, 2024, Magistrate Judge Kimberly G. Altman ordered Defendant detained pending trial after a detention hearing and where she found, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  (ECF No. 9)  Defendant filed a motion for revocation of detention on April 1, 2024, which this Court denied after a hearing.  (ECF Nos. 13, 27)  Defendant then brought a second motion for revocation of the detention order on June 7, 2024, which this Court also denied.  (*See* ECF Nos. 30, 31)

In evaluating the issue of detention, the Court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).  "The default position of the law [] is that a defendant should be released pending trial."  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  However, under the Bail Reform Act, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community.'" *Id.* (quoting 18 U.S.C. § 3142(e)).

The Court has considered Defendant's arguments and finds them to be without merit as they fail to address the Court's findings that all factors under the Bail Reform Act, 18 U.S.C. § 3145(g), either weigh in favor of detention or remain neutral. As previously stated by this Court, in analyzing dangerousness under 18 U.S.C. § 3142(g), courts may consider uncharged conduct. *See United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) (alterations added) ("[T]he Court also considers . . . conduct [that] did not result in criminal charges."); *United States v. Brown*, No. 22-383, 2022 WL 10080824, at *3 (N.D. Ill. Oct. 17, 2022) (alteration added) (citation omitted) ("[E]vidence of uncharged conduct may be considered at a detention hearing, as long as it is properly evaluated and weighed.").

The mere passage of time since the instigation of this case does not change the Court's evaluation of the strength of the evidence supporting a finding of dangerousness. The Defendant has presented nothing to assuage the concerns surrounding the nature and circumstances of Defendant's possessory offenses outlined in this Court's prior order. (ECF No. 27, PageID.134) The Court's initial order was not contingent on the government superseding the indictment to bring

additional charges, it was based only on the conduct charged and information properly before the Court.

The Court has also previously considered the Defendant's suggestion of a third-party custodian and found that such a custodian would not resolve the findings of dangerousness.  (ECF No. 31)  Defendant has raised no new circumstances which would justify reconsidering this finding. Consequently, the motion is **DENIED**.

IV.   **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment is **DENIED** (ECF No. 24);

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion for Bond Review is **DENIED** (ECF No. 33).

                                                    s/ Linda V. Parker
                                                    LINDA V. PARKER
                                                    U.S. DISTRICT JUDGE

Dated: December 3, 2024