UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Case No. 24-cr-20174

v.                                  Honorable Linda V. Parker

LEROY BENJAMIN YOUNG,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 36)

Defendant Leroy Benjamin Young ("Defendant") is charged in a two-count indictment with: (I) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and (II) felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 14)  This matter is before the Court on Defendant's Motion to Suppress Evidence.  (ECF No. 36)  For the reasons described below, the motion is **DENIED**.

## I.     Background

Defendant seeks to suppress all evidence seized during the execution of a search warrant for 12689/12691 Roselawn, Detroit, Michigan (the "Roselawn Residence"), and the adjacent vacant lots known as 12675 Roselawn, Detroit, Michigan and 12667 Roselawn, Detroit, Michigan which occurred on March 20,

2024 (the "search").  During the search, the FBI seized a loaded Davis Industries

Model D 32 (.32 Auto) handgun and miscellaneous ammunition.  (ECF No. 1,

PageID.4)

Young argues that the search warrant was not supported by probable cause

as the confidential Adult Victims in this case are tantamount to confidential

informants and their statements were not sufficiently corroborated.  He also argues

that the search warrant is void for staleness due to lack of sufficient temporal

reference points and is unconstitutionally overbroad.  Finally, he argues that the

good-faith exception described in *United States v. Leon*, 468 US 897 (1984) does

not apply as the probable cause finding was objectively unreasonable and the

affidavit lacked any basis upon which an officer could reasonably rely to search the

home.  In response, the government argues that the warrant was supported by

probable cause, was neither stale nor overbroad, and regardless, the good-faith

exception applies.  (ECF No. 40)

On March 19, 2024, a search warrant was presented to and authorized by

United States Magistrate Judge Anthony Patti for the search of the Roselawn

Residence.  (ECF No. 42)  The search warrant was in furtherance of the

government's investigation of Young for sex trafficking, felon in possession of a

firearm, and distribution of controlled substances.  (*Id.* at PageID.311)  FBI Special

Agent Jeremy Jaskulski's 48-page affidavit was submitted in support of the search warrant.  (*Id.*)

The affidavit includes information obtained from four Adult Victims whose identities are known to law enforcement.  As averred in the affidavit, on July 1, 2022, Adult Victim 1 ("AV-1") reported being the victim of sex trafficking at the Roselawn Residence to law enforcement.  AV-1 reported to police officers that Young picked her up on June 15, 2022, and forced her to engage in commercial sex dates until she fled the Roselawn Residence.  Agent Jaskulski corroborated AV-1's report with several online postings advertising commercial sex dates with AV-1 in Detroit between June 17, 2022, and August 12, 2022.

Adult Victim 2 ("AV-2") was interviewed by law enforcement after her arrest during an undercover operation on October 11, 2023.  At the time of the interview, AV-2 had a series of circular burns on her hands and arms which she reported were injuries she had received from her "pimp" who she identified as Young.  AV-2 provided details about Young, Young's associates, the commercial sex operation, the Roselawn Residence, Adult Victim 3 ("AV-3") and Adult Victim 4 ("AV-4").  AV-2 provided detailed accounts of Young's abuse including an instance where AV-2 attempted to escape the Roselawn Residence but was caught and assaulted by Young.  AV-2 stated that Young had forced her to engage in commercial sex dates over the past year at the Roselawn Residence.

Agent Jaskulski corroborated AV-2's statements with online commercial sex advertisements which featured her.  Some of these advertisements included a known associate of Young, who also lived at the Roselawn Residence. Additionally, AV-2 consented to a search of her cell phone which contained photos of AV-2, AV-4, and Young.  The cell phone also contained photographs which GPS metadata shows were taken at the Roselawn Residence on September 23, 2023.

AV-3 was arrested on February 15, 2024, during an undercover operation and was interviewed by law enforcement.  AV-3 identified Young as her "pimp" and provided details about his conduct.  AV-3 stated that she had been forced to engage in commercial sex dates for Young since 2017.  AV-3 had lived at the Roselawn Residence until approximately a week before the interview and stated that Young forced her to engage in sexual intercourse with him there on multiple occasions.  She had updated her address on her Michigan driver's license to the Roselawn Residence on October 22, 2018.

Additionally, AV-3 identified AV-4 as an individual that Young had working for him at the Roselawn Residence.  AV-3 also stated that she had seen two of Young's associates who drove victims to and from commercial sex dates driving a white Mercury sedan approximately a week and a half before the interview.

4

AV-3 also stated that Young regularly provided her with fentanyl and crack, she had observed Young with large quantities of such drugs at the Roselawn Residence on multiple occasions, and believed that Young buried drugs in the backyard of the Roselawn Residence.  AV-3 also stated that Young had trained dogs to attack on command and had multiple firearms in the Roselawn Residence. AV-2 also stated that she had observed Young with large quantities of "dope" at the Roselawn Residence, believed that Young kept drugs buried in the backyard of the Roselawn Residence, and he had several dogs used to protect the drugs.

AV-3's account was corroborated by hundreds of online postings advertising commercial sex dates with AV-3 and AV-4.  These posts were published between June 2022 and February 2024, and predominantly listed Detroit as the location of AV-3 and AV-4.  Young's public Facebook page included a photograph of Young at the Roselawn Residence wearing a Dean & Tyler Bite Suit, which is used to train dogs to bite on command.  Agent Jaskulski identified Young as the owner of a white Mercury Milan, which matched the description of the vehicle described by AV-3.

Agent Jaskulski averred that he had independently corroborated much of AV-3's account of Young's actions and believed her to be a credible source of information.  AV-3 reported that she had observed firearms in the Roselawn Residence on multiple occasions.  Furthermore, in Agent Jaskulski's experience,

individuals who store and distribute controlled substances often possess and use firearms. A review of Young's criminal history revealed that he has four prior felony convictions, including a 2002 conviction for Delivering/Manufacturing of Controlled Substances (Cocaine, Heroin, or Another Narcotic), a 1997 conviction for Delivering/Manufacturing of Controlled Substances, and a 1993 conviction for Possession of Controlled Substance.

## II.    Sufficiency of the Affidavit

Generally, the Fourth Amendment requires officers to obtain a warrant before conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). A warrant may issue upon the satisfaction of three requirements:

> (1) it must be issued by a "neutral, disinterested" magistrate or judge; (2) "those seeking the warrant must demonstrate to the magistrate or judge their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) the warrant "must particularly describe the things to be seized, as well as the place to be searched."

*United States v. Smith*, No. 21-1457, 2022 WL 4115879 (6th Cir. Sept. 9, 2022) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)) (brackets and additional quotation marks omitted).

"A warrant will be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Smith*, 510 F.3d at 652 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In other words, "the

6

circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must . . . be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

"The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *Gates*, 462 U.S. at 231). "The . . . inquiry requires a 'flexible, all-things-considered approach'— 'turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Smith*, 2022 WL 4115879, at *3 (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). "It is a . . . question based on 'common-sense conclusions about human behavior.'" *Id.* (quoting *Gates*, 462 U.S. at 230–31). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

An affidavit in support of a search warrant "must be judged 'holistically on what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit.'" *Smith*, 2022 WL 4115879, at *6 (quoting *United States v. Christian*, 925 F.3d 305 (6th Cir.

7

2019) (en banc)) (brackets omitted).  Furthermore, a reviewing court should "not engage in 'hypertechnical, line-by-line scrutiny of the affidavit' because that practice has been 'explicitly forbidden by the Supreme Court.'" *Id.* (quoting *Christian*, 925 F. 3d at 311) (cleaned up).

"It is now long-settled that officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (additional quotation marks omitted).  "The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about *where evidence is likely to be kept*."  *Id.* (quotation marks and citations omitted).

Further, when reviewing a search warrant issued by another judicial officer, a reviewing court must afford "great deference" to the probable cause determination that was made.  *Smith*, 510 F.3d at 652 (citing *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993)); *see also United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).  As such, a magistrate judge's decision to grant a search warrant should be reversed "only . . . if it was arbitrarily exercised." *Smith*, 510 F.3d at 652 (quoting *Allen*, 211 F.3d at 973); *United States v. Finch*, 998 F.2d 349, 352  (6th Cir. 1993).

8

Applying this standard to the affidavit in this case, the fair probability required to validate the warrant has been established. Nevertheless, even if probable cause was not established, the *Leon* good-faith exception applies.

## A.   Nature of Informants

Young argues that the Adult Victims were not victims or citizen informants, but instead confidential informants whose statements the FBI failed to sufficiently corroborate. The Sixth Circuit has held that "statements of victims and eyewitnesses of crimes are entitled to a presumption of reliability and veracity without independent corroboration." *United States v. Ingram*, 985 F.2d 562, 562 (6th Cir. 1993); *see also United States v. Giles*, No. 21-20398, 2022 WL 3447595 (E.D. Mich. Aug. 17, 2022).

From the information included in the affidavit, AV-1 was clearly a victim of sex trafficking and not a confidential informant. Her identity is known to law enforcement and she voluntarily reported her victimization to the police in-person, which further bolsters her credibility. Although AV-2 and AV-3 made statements incident to their arrests, they are also victims of sex trafficking. They are thus entitled to a presumption of reliability and their statements were sufficient for the magistrate to find probable cause. Notably, unlike many confidential informants, none of the victims were actively assisting law enforcement at the time the statements were reported.

Even if the Adult Victims may have had personal motives to make a report against Young, this is not dispositive as "persons with personal motives are often the source of very reliable information. To require a police officer to discount such information would result in the rejection of a good deal of evidence relied upon daily by courts and juries." *United States v. Czuprynski*, 46 F.3d 560, 564–65 (6th Cir.).  However, even if this Court views AV-2 and AV-3 as confidential informants, the affidavit provided sufficient indicia of reliability and independent corroboration of their statements to find probable cause.

## B.   Indicia of Reliability

"Probable cause for the issuance of a search warrant may be based on an informant's hearsay information, but the issuing judge must have a basis for finding that the informant is reliable, truthful, and in a position to know the information provided." *United States v. Goodwin*, 552 F. App'x 541, 546 (6th Cir. 2014).  In the case of a confidential informant,

> [W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

*United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).  Importantly, "an affidavit can pass muster without stating both that the informant gave his or her name and that the informant provided reliable information in the past." *Id*. at 698.

The affidavit includes no averment that the Adult Victims previously provided reliable information to law enforcement or indication that their names were provided to the magistrate.  However, there is no requirement that an informant have given reliable information in the past and the identities of the Adult Victims were known to law enforcement.

Additionally, the affidavit includes substantial information from which the magistrate could independently determine that the Adult Victims were reliable, in addition to independent corroboration of their statements. First, the facts that the Adult Victims' identities were known and they made their statements to law enforcement in-person suggest they were reliable because the interviewing officers could assess their demeanor and they could be held accountable for false information.  *See Henness v. Bagley*, 644 F.3d 308, 318–19 (6th Cir. 2011).

The Adult Victims also provided detailed firsthand accounts of the criminal activity they witnessed and suffered shortly after the events occurred, which further bolsters their reliability.  *Id*.  Furthermore, AV-2 and AV-3 had reason to know the information they provided to law enforcement as they lived at the Roselawn

Residence for an extended period, which was corroborated by the fact it was the address listed on their drivers' licenses.

Under the totality of the circumstances, the affidavit provided sufficient information from which the magistrate could determine that the Adult Victims were reliable sources of information, particularly when combined with the additional independent corroboration discussed below. *See infra* Section II.C. "[A]s all of the case law makes clear, a common-sense approach must be taken when evaluating reliability, and common sense would suggest that the [victims were] reliable here." *United States v. Ruth*, 489 F. App'x 941, 943 (6th Cir. 2012).

## C.    Independent Corroboration

In addition to indicia of reliability, "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004).  The affidavit in this case also contains substantial independent corroboration of the victims' statements which supports a finding of probable cause.  First, the affidavit stated that Agent Jaskulski located numerous commercial sex advertisements for the Adult Victims and these ads identified the location of the victims as Detroit, Michigan.

12

Additional specific corroboration for each victim was also provided.  AV-2's statements were corroborated by the fact that at the time of her arrest, she had circular burns on her hands and arms, photographs of which were included in the affidavit.  Furthermore, AV-2's cell phone contained Young's phone number, photographs of AV-2 and AV-4 with Young, photographs whose GPS metadata showed they were taken at the Roselawn Residence in 2023, a text message scheduling a commercial sex date which indicating that AV-2 was at a "roselawn address" and additional commercial sex advertisements listing AV-2's phone number.

The allegation that Young had a dog trained to attack on command was corroborated by Young's Facebook page which featured a photograph of him with a bite suit and a dog.  Young was also confirmed to be the owner of a white Mercury Milan.  AV-2's and AV-3's statements that Young possessed controlled substances are also corroborated by Young's prior convictions which show he has possessed controlled substances in the past.  *See United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (noting that defendant's criminal history—included in the affidavit—constituted "independent corroboration" that "provided other indicia of reliability").  Records also verified that Young owns the Roselawn Residence and that  AV-2 and AV-3 both listed the Roselawn Residence as their address on their driver's licenses.

Another significant form of corroborating information is the consistent statements of multiple informants. *Goodwin*, 552 F. App'x at 547 ("By telling consistent yet independent stories, informants provide cross-corroboration, and enhance the reliability of the application as a whole.") (internal alterations, quotations, and citations omitted). In this case, three separate Adult Victims made consistent, independent statements at different times and under different circumstances. The consistency of the reports further corroborates the Adult Victims' statements.

Young cites *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005) in support of his argument. However, *Frazier* is readily distinguished from the current case. In *Frazier*, there was no evidence that the FBI corroborated the information provided by confidential informants. Furthermore, none of the confidential informants in *Frazier* witnessed criminal activity at the premises to be searched. *Id.* at 533. Instead, the affidavit in *Frazier* relied on the defendant's status as a drug dealer and evidence of criminal activity at other locations to support a finding of probable cause. *Id.* The Court also notes that in *Frazier*, despite the deficiencies in the affidavit, the court found that the *Leon* good-faith exception applied. In this case, the Adult Victims reported criminal activity occurring at the Roselawn Residence which was corroborated by the FBI as previously discussed.

This geographic tie provides the link to the place to be searched which was missing in *Frazier*.

Although Young may prefer that the FBI have set up a controlled buy or other additional investigation, "independent corroboration of *criminal* activity" is not required. *United States v. Hines*, 885 F.3d 919, 925 (6th Cir. 2018). "Corroboration of specific nonobvious information that, although innocent on its own, meshes with an informant's tips is similarly relevant." *Id.*

Under the totality of the circumstances, viewing both the indicia of reliability and the independent corroboration of the Adult Victims' statements, the magistrate had a substantial basis for concluding that the warrant affidavit showed a fair probability that evidence of sex trafficking, felon in possession of a firearm, or distribution of a controlled substance would be found at the Roselawn Residence. For those reasons, the Court finds that even viewing the Adult Victims as confidential informants, the search warrant was supported by probable cause.

## III.   *Leon* Good Faith Exception

Evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective generally should not be suppressed. *See Leon*, 468 U.S. at 905. The relevant inquiry to decide whether *Leon*'s exception applies is an objective one, asking "whether a reasonably well trained officer would have

known that the search was illegal despite the magistrate's authorization." *Id.* at

922 n.23.  The exception is not applicable, however, where:

> 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*Frazier*, 423 F.3d at 533 (citing *Leon*, 468 U.S. at 923).

There is no suggestion that Agent Jaskulski presented false or reckless

statements to the magistrate, nor is there any indication that the magistrate acted

merely as a rubber stamp for the police.  "The question, therefore, is whether the

affidavit supporting the warrant was so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable." *Hython*, 443 F.3d at

484. "The showing required to establish that reliance was 'objectively reasonable'

is less than the 'substantial basis' showing required to establish probable cause."

*Id.*

The Sixth Circuit described the objectively reasonable exception in *United

States v. Baker*, 976 F.3d 636 (6th Cir. 2020) and explained that:

> Given that police misconduct must qualify as "purposeful or flagrant" to justify suppression, this exception applies only if the affidavit can be described as "bare bones[.]" The classic bare-bones affidavit asserts only an officer's conclusion that probable cause exists "without any statement of adequate supporting facts." For search warrants, we have found this test met when the affidavit lacked any allegation tying illegal activity to the place to be searched, or when it contained no basis to believe that contraband would still remain there. An affidavit seeking a search warrant is not bare bones, by

16

contrast, if it contains "some modicum of evidence, however slight,"
"between the criminal activity at issue and the place to be searched[.]"

*Baker*, 976 F.3d at 647 (citations omitted).

In this case, there is sufficient indication of probable cause that it would not

be entirely unreasonable for a law enforcement officer to rely on the affidavit.

Specifically, the affidavit included information from three separate Adult Victims

and corroborating information suggesting that sex trafficking had recently occurred

at the Roselawn Residence.  Furthermore, due to the fact the affidavit contained

specific details outlining how and when the Adult Victims were victims of sex

trafficking, an officer "could reasonably (or at least not recklessly) conclude that

the witness[es] in this case fell on the side of the spectrum requiring little in the

way of corroboration."  *Id.* at 649.  As in *Baker*, the affidavit included statements

from known but unnamed individuals and corroborating information which

supported the Adult Victims' statements.  This is sufficient to avoid a finding of

recklessness.

*United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), cited by Young, is

inapplicable because in *Hython* there was no information provided which tied the

criminal activity to the place to be searched.  Here, the Adult Victims stated that

they had witnessed sex and drug trafficking *at the Roselawn Residence*.  This

information tied criminal activity to the place to be searched, the missing

ingredient in *Hython*.

Young argues that the fact that the government is yet to charge him with sex trafficking or distribution of controlled substances suggests that no reasonable officer could have relied on the search warrant. However, in analyzing the existence of probable cause and determining an officer's reasonable reliance, the Court is generally limited to the four corners of the affidavit. *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005); *Frazier*, 423 F.3d at 535. As such, it would be inappropriate for the Court to consider whether the government has brought subsequent charges against Young. The government's decision to bring charges after the search warrant was executed is irrelevant to the question of if a reasonable officer would have relied on the warrant at the time of the search.

## IV.   Staleness

The standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit. *See United States v. Canan*, 48 F.3d 954, 958–59 (6th Cir. 1995). A staleness determination rests on several factors including:

> [T]he character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). "The passage of time becomes

18

less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). "Evidence of ongoing criminal activity will generally defeat a claim of staleness." *Greene*, 250 F.3d at 481.

In this instance, all four factors weigh against a finding of staleness. The first element, the nature of the crime, weighs against a finding of staleness as both drug and sex trafficking are generally continuous and ongoing offenses. *Greene*, 250 F.3d at 481. Additionally, illegal possession of a firearm, including felon in possession, is generally considered an ongoing offense which weighs against a finding of staleness. *See Goodwin*, 552 F. App'x at 545; *United States v. Pritchett*, 40 F. App'x 901, 906 (6th Cir. 2002).

Next, the criminal activity was "entrenched" as the affidavit indicates that sex trafficking occurred at the Roselawn Residence from 2017 until 2024. Specifically, AV-2 stated that Young forced her to do commercial sex dates "over the past year" upon her arrest in 2023. The text message and photo with GPS metadata were from 2023. Furthermore, commercial sex advertisements featuring AV-4 were posted up until February 12, 2024, roughly a month before the warrant was authorized and the search occurred.

The third factor also weighs against a finding of staleness as the evidence sought was not "perishable." The search warrant sought several durable items

19

including documents, records, or information related to Young's possession of firearms and sex trafficking, firearms and ammunition, contraband including drugs and proceeds from human trafficking, cell phones, security cameras, and other evidence.

The final factor, the place to be searched, also weighs against a finding of staleness. The Roselawn Residence was at the heart of the sex trafficking operation as multiple victims lived there for extended periods of time. Furthermore, it was Young's registered address. For the foregoing reasons, the Court finds that the warrant was not stale.

## V.      Overbreadth

The affidavit authorized the search of electronic devices for evidence of Young's criminal activity since January 1, 2017, which Young argues is unconstitutionally overbroad. The Fourth Amendment "requires that a warrant describe with particularity the items to be seized, so as 'to prevent the use of general warrants authorizing wide-ranging rummaging searches' that violate the prohibition against unreasonable searches and seizures." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (internal citations omitted).

However, "[w]hile a general order to explore and rummage is not permitted, the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471,

477 (6th Cir.2001) (internal quotations and citation omitted). Therefore, "a description is 'valid if it is as specific as the circumstances and the nature of the activity under investigation permit.'" *Id.* (quoting *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir.1999)). Additionally, "infirmity due to overbreadth does not doom the entire warrant; rather, it requires the suppression of evidence seized pursuant to that part of the warrant . . . but does not require the suppression of anything described in the valid portions." *Id.* (internal quotations omitted).

In the context of warrants seeking electronic data, the Sixth Circuit has "employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis." *United States v. Evers*, 559 F.3d 645, 653 (6th Cir. 2012). Thus, "officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *Id.* (quoting *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009)).

Young argues that there were no meaningful limitations on the time period of the search warrant and directs the Court's attention to the analysis in *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006). However, *Abboud* is inapposite as the warrant allowed law enforcement to seize six years of records while the affidavit only described misconduct occurring over a three-month period. *Id.*

In this case, the affidavit indicates that Young has been involved in sex trafficking as far back as 2017, based on the statements of AV-3. The time frame may be broad, however, it is tailored to the needs of the investigation and based on information that suggests the criminal activity has been ongoing between 2017 and the date of the search. For these reasons, the search warrant was not overbroad.

## VI.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Suppress is **DENIED** (ECF No. 36).

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 28, 2025